```
Approved:  _____
           T. JOSIAH PERTZ
           Assistant United States Attorney

Before:    THE HONORABLE ANDREW E. KRAUSE
           United States Magistrate Judge
           Southern District of New York
```

```
- - - - - - - - - - - - - - - - - - -  X      21 MJ 9282
                                        :
UNITED STATES OF AMERICA                :      COMPLAINT
                                        :
   - v. -                               :      Violation of 21 U.S.C.
                                        :      § 846
MIGUEL LAVERGNE, and                    :
CRESENCIANO FERNANDEZ,                  :
                                        :
                                        :      COUNTY OF OFFENSE:
                Defendants.             :      WESTCHESTER
                                        :
- - - - - - - - - - - - - - - - - - -  X
```

SOUTHERN DISTRICT OF NEW YORK, ss.:

JOHN KERWICK, being duly sworn, deposes and says that he is a Task Force Officer with the United States Drug Enforcement Administration ("DEA"), and charges as follows:

**COUNT ONE**
(Narcotics Conspiracy)

1. On or about September 25, 2021, in the Southern District of New York and elsewhere, MIGUEL LAVERGNE and CRESENCIANO FERNANDEZ, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that MIGUEL LAVERGNE and CRESENCIANO FERNANDEZ, the defendants, would and did possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

3. The controlled substance that MIGUEL LAVERGNE and CRESENCIANO FERNANDEZ, the defendants, conspired to distribute and possess with intent to distribute was 400 grams and more of mixtures and substances containing a detectable amount of N-

phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as Fentanyl, in violation of 21 U.S.C. § 841(b)(1)(A).

(Title 21, United States Code, Section 846).

The bases for my knowledge and the foregoing charge are, in part, as follows:

3.  I am a Task Force Officer with the DEA, and I have been personally involved in the investigation of this matter. In the course of my employment with the DEA, I have participated in numerous narcotics investigations. I base this affidavit on that personal experience, as well as on my conversations with other law enforcement officers, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

<u>The September 25, 2021 Car Stop</u>

4.  Based on my involvement in this investigation, as well as my conversations with an officer ("Officer-1") of the Westchester County Police Department ("WCPD") and my review of documents provided by Officer-1, I have learned the following, in substance and in part:

    a.  On or about September 25, 2021 at approximately 11:25 a.m., Officer-1 was patrolling the Cross County Parkway in the vicinity of Mount Vernon, New York, in a marked police vehicle, when Officer-1 observed a silver Honda sedan with a Massachusetts license plate (the "Silver Honda") travelling approximately 15-20 miles per hour faster than the speed limit. Officer-1 followed the Silver Honda northbound onto the Hutchinson River Parkway in the vicinity of New Rochelle, New York, and signaled for the vehicle to pull over, which it did.

    b.  Officer-1 walked up to the passenger side of the Silver Honda and asked the driver for his license and registration, which identified the driver as MIGUEL LAVERGNE, the defendant.  In the passenger seat was an individual later identified by his Massachusetts driver's license as CRESENCIANO FERNANDEZ, the defendant.

2

   c. Officer-1 asked LAVERGNE about his itinerary, and FERNANDEZ immediately answered for LAVERGNE.  FERNANDEZ said, in substance and in part, that the pair had driven down this morning to visit his uncle who had COVID-19 three weeks ago.  When asked where his uncle lives, FERNANDEZ stuttered and said it was in Manhattan, but did not know the exact location.  Officer-1 asked how LAVERGNE and FERNANDEZ knew each other, and learned that LAVERGNE was FERNANDEZ's mechanic.  When Officer-1 asked how long the two had spent in New York City, FERNANDEZ did not answer, redirecting the conversation back to his sick uncle, traffic, or the food they had picked up. Eventually, FERNANDEZ responded that they visited just for today and had traveled to New York City early in the morning.

   d. After returning to his police vehicle, Officer-1 reviewed DMV information and found that the Silver Honda was rented by LAVERGNE in his name.  Officer-1 also reviewed license plate reader data and learned that the Silver Honda had traveled southbound on the Hutchinson River Parkway approximately two hours earlier.

   e. A second WCPD officer ("Officer-2") arrived at the scene.  Officer-1 returned to the Silver Honda and asked LAVERGNE to step out of the vehicle, which he did.  Officer-1 asked LAVERGNE, in substance and in part, whether there was anything illegal in the vehicle.  LAVERGNE said there was not.  Officer-1 asked LAVERGNE if there were drugs in the car, and LAVERGNE responded, in substance, "I am not trying to go to jail."  Officer-1 then asked LAVERGNE if Officer-1 could check to make sure there was nothing illegal in the vehicle, to which LAVERGNE stated, "there's nothing illegal but yeah you can go ahead."

   f. After receiving consent from LAVERGNE, Officer-1 proceeded to search the vehicle, and at no point did either LAVERGNE or FERNANDEZ object to the search or tell Officer-1 to stop.  On the floor behind the driver's seat, Officer-1 saw a red backpack. Officer-1 opened the backpack and found a black plastic bag containing several clear plastic bags of pills, with some bags containing yellow pills and some containing blue pills (collectively, the "Subject Pills").  Officer-1 estimated that there were hundreds and hundreds of pills in the backpack.  Officer-1 also found a blue pill in the center console.  Based on training and experience, Officer-1 recognized the blue pills as potential oxycodone – a controlled substance – and knew that pharmacies do not typically dispense pills in those quantities

or in that kind of plastic packaging.[1]  Officer-1 and Officer-2 placed LAVERGNE and FERNANDEZ in handcuffs, and transported them to the WCPD offices in Hawthorne, New York.

<u>Examination and Testing of the Subject Pills</u>

5.   On or about the afternoon of September 25, 2021, I arrived at the WCPD offices, and met Officer-1.  Officer-1 showed me the backpack containing the Subject Pills.  Based on my examination of the Subject Pills, I determined the following, in substance and in part:

  a.   The Subject Pills were packaged in approximately six plastic bags.  I weighed the Subject Pills, while in their plastic packaging, and the total weight was approximately 1,987 grams.  Given what appeared to be the relatively minimal weight of the packaging, I believe that the substances inside the packaging weigh more than 400 grams.

  b.   Approximately half of the Subject Pills are yellow and oblong, while the other half are blue and round.  The yellow pills contain markings that I recognize based on training and experience to be similar to markings found on 10mg Percocet pills, and the blue pills contain markings that I recognize based on training and experience to be similar to markings found on 30mg oxycodone pills.  The Subject Pills bear signs of counterfeiting.  For instance, some pills had inconsistent coloration, or crumbling edges, and the identifying markings vary from pill to pill.

  c.   I field tested one of the blue Subject Pills and one of the yellow Subject Pills, and both tested positive for fentanyl.

<u>Post-Arrest Interview with MIGUEL LAVERGNE</u>

6.   While in custody at the WCPD offices, MIGUEL LAVERGNE, the defendant, waived his *Miranda* rights and agreed to be interviewed.  From my interview with LAVERGNE, which I conducted

---

[1] Under New York State law, except for the current use of the substance by the person for whom it was prescribed, it is unlawful for an ultimate user of a controlled substance to possess such substance outside of the original container in which it was dispensed.  NY Pub. Health L. § 3345.  Further, under New York State law, unlawful possession of a controlled substance is a crime.  *See* N.Y. Penal L. § 220.03.

4

along with another WCPD officer ("Officer-3"), I learned the following, in substance and in part:

      a.    LAVERGNE stated that his name was "Miguel Lavergne," and provided a certain date of birth.  I later reviewed a Massachusetts driver's license with that name and date of birth, as well as a photo, and the information on the license matched the physical description, name and date of birth of LAVERGNE.

      b.    LAVERGNE stated, in substance and in part, the following.  He knows CRESENCIANO FERNANDEZ, the defendant, from doing auto repair work for FERNANDEZ.  LAVERGNE knows that FERNANDEZ is a drug dealer, because FERNANDEZ has sold drugs to LAVERGNE's coworkers.  LAVERGNE knew that he and FERNANDEZ were driving to New York City to pick up drugs, and that in the morning, FERNANDEZ had a great deal of cash in the red backpack.  FERNANDEZ had made phone calls discussing where they were and where to meet their connection, and had directed LAVERGNE to drive to an address in Upper Manhattan.  FERNANDEZ took the red backpack, got out of the car at the Upper Manhattan address, and came back with the backpack.  LAVERGNE expected to receive money for gas, food, and a couple hundred dollars for driving FERNANDEZ.

<u>Post-Arrest Interview with CRESENCIANO FERNANDEZ</u>

    3.    While in custody at the WCPD offices, CRESENCIANO FERNANDEZ, the defendant, waived his *Miranda* rights and agreed to be interviewed.  From my interview with FERNANDEZ, which I conducted along with Officer-3, I learned the following, in substance and in part:

      a.    FERNANDEZ stated that his name was "Cresenciano Fernandez," and provided his date of birth.  I later reviewed a Massachusetts driver's license with that name and date of birth, as well as a photo, and the information on the license matched the physical description, name and date of birth of FERNANDEZ.

      b.    FERNANDEZ further stated the following, in substance and in part.  He has five children with several different women, requiring expensive child support payments.  He has a job as a store clerk that does not pay enough, so he started selling drugs a few months ago.  He met someone in Massachusetts who connected him with a drug dealer in New York City.  FERNANDEZ traveled to New York City earlier that day to purchase 2,000 pills.  FERNANDEZ claimed the pills were provided

5

to him on credit, with the expectation that FERNANDEZ would have to deliver money to the drug dealer in the next week or so. FERNANDEZ first suggested the price of the drugs was between $10,000 and $20,000, and then said $20,000.  FERNANDEZ said he did not want to give information about the person from whom he purchased drugs, and said that he does not mind doing jail time.

    WHEREFORE, deponent respectfully requests MIGUEL LAVERGNE and CRESENCIANO FERNANDEZ, the defendants, be imprisoned or bailed, as the case may be.

                                        */s/ John Kerwick* (by AEK, with permission)
                                        (credentials inspected)
                                        _____
                                        John Kerwick
                                        Task Force Officer
                                        Drug Enforcement Administration

Sworn to me by reliable electronic
means in accordance with Fed. R. Crim.
P. 4.1, this 26th day of September,
2021, **by FaceTime**

_____
THE HONORABLE ANDREW E. KRAUSE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

6